**Rodney Dwight MELTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–96–00611–CR.**

Court of Appeals of Texas, Dallas.

March 12, 1998.

---

**1.** *See Clark v. University of Houston,* 979 S.W.2d 707, 712 (Houston [14th Dist.] 1998, pet. filed) (en banc).

Jeanine Howard, Dallas, for Appellant.

Sue Korioth, Lisa L. Braxton, Asst. Dist. Attys., Dallas, for State.

Before LAGARDE, WHITTINGTON and ROACH, JJ.

## OPINION

ROACH, Justice.

We must decide whether Rodney Dwight Melton, who contends he was erroneously informed by his court-appointed trial attorney that he had been captured on videotape committing the charged crime, was denied effective assistance of counsel, resulting in an involuntary guilty plea. Appellant pleaded guilty to aggravated robbery and was sentenced to ten years in prison and fined $1000. On appeal, he complains his plea of guilty was involuntary due to ineffective assistance of counsel. We agree with appellant; accordingly, we reverse the trial court's judgment and remand for a new trial.

Appellant was arrested on November 5, 1995 and charged with robbing a pet shop employee at knifepoint one week earlier. Appellant was indigent, and the trial court appointed an attorney to represent him. On January 5, 1996, appellant pleaded guilty to the charge of aggravated robbery without an agreement as to punishment. After a sentencing hearing one week later, the trial court sentenced him to ten years in prison and fined him $1000. Appellant did not testify at either the plea hearing or sentencing hearing.

Appellant timely filed a motion for new trial claiming his plea was involuntary and that he received ineffective assistance of

counsel. Specifically, appellant asserted that he suffered alcohol blackouts and had no memory of committing the offense. He asserted that he pleaded guilty only because his trial counsel told him he had been captured on videotape committing the crime when, in fact, no such videotape existed. Once told a videotape existed, appellant "felt that he must have committed the aggravated robbery" even though he could not remember the event.

The trial court conducted a hearing on appellant's motion. At the hearing, appellant testified he told trial counsel at their first meeting he was pleading not guilty. A couple of days later, appellant spoke to trial counsel by telephone. At that time, trial counsel asked him about the robbery, and appellant again told him he was not guilty. Sometime later, appellant spoke with his attorney again. During this conversation, appellant said trial counsel told him the robbery had been videotaped. Appellant testified counsel advised him to "call my wife and tell her that I committed the robbery because they saw me on film committing the robbery and I had to change my plea from not guilty to guilty." Appellant asked to see the videotape, but trial counsel told him there was "no chance" of that. After this conversation, appellant agreed to plead guilty. When asked why he changed his plea, appellant said he had no memory of committing the crime, but "[trial counsel] said they had me on film and they watched me doing the crime, so I must have felt like I had to be guilty." Appellant said he did not remember committing the robbery because he has a drinking problem. Appellant testified he would not have pleaded guilty had he known there was no film of the robbery.

Two of appellant's relatives confirmed that appellant had an alcohol problem and had suffered blackouts in the past. Additionally, they testified that trial counsel represented that a videotape existed of appellant committing the robbery. Nathaniel Williams, appellant's brother-in-law, said he talked with trial counsel a couple of weeks after appellant's arrest. During that telephone conversation, Williams said trial counsel told him it did not "look good" for appellant because "[t]hey got him on tape." Appellant's sister Diane Melton testified she visited trial counsel and asked to see the videotape. Trial counsel told her that would be "difficult and if we forced the issue with the District Attorney's office, that it would make it worse for [appellant]." Ms. Melton said her family, not wanting to "make the case any worse on [appellant]," did not force the issue.

Trial counsel also acknowledged that appellant originally planned to plead not guilty and had told him he had no memory of committing the robbery. When asked specifically whether he told appellant, at any point, that there was a videotape of him committing aggravated robbery, trial counsel gave a lengthy response, in which he acknowledged telling appellant there "might" be a videotape.[1] Further, on cross-examination, trial

---

1. Trial counsel's testimony at the new trial hearing was as follows:

> [THE STATE]: At any point did you inform your client, Mr. Melton, that there was a videotape of him committing the offense of aggravated robbery?
>
> [TRIAL COUNSEL]: I was appointed by Judge Nelms to represent Mr. Melton. The first step that we took in the representation of Mr. Melton was to contact the prosecutor in the District Attorney's office.... [S]he basically read the offense report to us over the telephone which showed that there were two defendants [sic] that had identified the defendant as being the person that had come into the store and robbed them, *there might be a videotape,* and that they had arrested the defendant with a knife on him which corresponded to the description that these two witnesses had given.

> Prior to that conversation with the district attorney in the grand jury, Mr. Melton said that he was going to enter a plea of not guilty to this offense based on the fact that he didn't have any memory of the events but that he would be—that he was with his wife watching a football game.
>
> We relayed the information about the pocketknife to Mr. Melton's wife who said that he, in fact, did possess such a knife. And then I had several conversations with Mr. Melton about these witnesses who knew him not just as someone that came in off the street but as a regular customer of this particular pet store where he had acquired goldfish and food for goldfish.
>
> Mr. Melton acknowledged that, in fact, he was a regular at this store and that he had been in there on many occasions. He told me he had a drinking problem, that he had black-

counsel testified that he told appellant "if there was a videotape and he turned out to be on the videotape, that that [sic] would be hard to claim that he was innocent of the offense."

■ Both sides stipulated there was no videotape of the crime for which appellant was charged. In fact, the State told the trial court that "there are no notes made in the prosecution file that there was a videotape." Following testimony and argument, the trial court denied the motion for new trial. Appellant timely appealed. In two points of error, he contends (i) the trial court abused its discretion in denying his motion for new trial because his plea was involuntary due to ineffective assistance of counsel and (ii) he was denied effective assistance of counsel.[2]

■ The grant or denial of a motion for new trial is a matter entirely within the trial court's discretion. State v. Gonzalez, 855 S.W.2d 692, 696 (Tex.Crim.App.1993); Appleman v. State, 531 S.W.2d 806, 810 (Tex.Crim. App.1975). An abuse of discretion occurs when the trial court's decision is so clearly wrong as to lie outside the zone within which reasonable persons disagree. Cantu v. State, 842 S.W.2d 667, 682 (Tex.Crim.App.1992),

cert. denied, 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993); Helton v. State, 909 S.W.2d 298, 301 (Tex.App.—Beaumont 1995, pet. ref'd). At the hearing on the motion for new trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Lewis v. State, 911 S.W.2d 1, 7 (Tex.Crim.App.1995). The trial judge may properly consider the interest and bias of any witness and is not required to accept as true testimony of the accused or any defense witness simply because it is uncontradicted. Reissig v. State, 929 S.W.2d 109, 113 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd); Messer v. State, 757 S.W.2d 820, 828 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

In Texas, a defendant in a criminal case is entitled to reasonably effective assistance of counsel. Wilkerson v. State, 726 S.W.2d 542, 548 (Tex.Crim.App.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). To show ineffective assistance of counsel at the guilt/innocence stage of trial, a convicted defendant must show (1) his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel, and (2) the deficient performance prejudiced the defense

---

outs as a result of his drinking, and that all he remembered on the day of the offense was that he had been watching a football game, had gone out to get some beer, and I believe his wife confirmed that that is, in fact, what happened. And the halftime of the game corresponded to the time frame of the offense.

Mr. Melton wanted to get treatment for his alcohol abuse. We entered a plea of guilty and we put on testimony of his mother that he did have a drinking problem, that it affected him. And had Mr. Melton gotten deferred probation and the treatment in Wilmer that he was hoping for, well, he wouldn't be here right now today.

But as I explained to Mr. Melton, that there was a chance that he could go to the penitentiary for life, for 5 years or anything in between. It was strictly up to the judge. And so that was the judge's ruling.

\*   \*   \*   \*   \*   \*

[THE STATE]: Now, [trial counsel], are you telling this Court that you did not tell the defendant that there was a videotape?
[TRIAL COUNSEL]: I relayed everything that I told the defendant.
(Emphasis added.)
On cross-examination, trial counsel was again asked about the videotape:

[NEW TRIAL HEARING COUNSEL]: [Trial counsel], did you say that Damita Sangermano was the first prosecutor you talked to about the facts of this case?
[TRIAL COUNSEL]: I believe that's correct.
[NEW TRIAL HEARING COUNSEL]: And is it your recollection that she told you that there might be a videotape of this robbery?
[TRIAL COUNSEL]: That's my recollection.
[NEW TRIAL HEARING COUNSEL]: And did you relay that information to Mr. Melton?
[TRIAL COUNSEL]: Yes, everything that I've testified to Mr. Melton was aware of.
[NEW TRIAL HEARING COUNSEL]: So whatever the prosecutor told you, you told to Mr. Melton.
[TRIAL COUNSEL]: That's correct.

2. Although an open plea of guilty waives all nonjurisdictional defects that occur prior to entry of the plea, Helms v. State, 484 S.W.2d 925, 927 (Tex.Crim.App.1972), the waiver rule is predicated on a knowing and voluntary plea. Thus, by its very terms, the Helms rule does not apply to bar appeals in open plea cases when a defendant claims the plea was involuntary. Flowers v. State, 935 S.W.2d 131, 133 (Tex.Crim.App.1996). Accordingly, we may address appellant's complaint regarding the voluntariness of his plea.

to such a degree that the defendant was deprived of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The two-pronged test of *Strickland* applies to guilty pleas. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Ex parte Pool,* 738 S.W.2d 285, 286 (Tex.Crim. App.1987). To satisfy the second prong of the *Strickland* test, an appellant must show there is a reasonable probability that, but for counsel's errors, appellant would not have entered his plea and would have insisted on going to trial. *Hill,* 474 U.S. at 59, 106 S.Ct. at 370–71; *Ex parte Pool,* 738 S.W.2d at 286.

■■■ Whether the *Strickland* standard has been met is judged by the totality of the representation rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of the trial, not through hindsight. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986). The convicted defendant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985). The particular facts and circumstances of each case must be considered in any claim of ineffective assistance. *Johnson v. State,* 691 S.W.2d 619, 626 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985).

In this case, appellant testified he had no memory of committing the aggravated robbery because he suffered alcohol blackouts. From the outset, he planned to plead not guilty. However, he changed his plea when his trial counsel told him he had been captured on videotape committing the crime. At that point, appellant concluded he must have committed the crime during one of his blackout periods.

Two family members corroborated appellant's story about the videotape. His brother-in-law testified that trial counsel told him appellant was "on tape" committing the rob-

bery. His sister testified that appellant told her he had no memory of committing the robbery. Consequently, she went to see trial counsel in hopes of viewing the videotape so there could be "some resolution in our family to know that this had happened ... and accept it if it were true." However, trial counsel told her it would be "very difficult" to get the tape from the district attorney's office, and the family would hurt appellant's case by forcing the issue.

Finally, trial counsel testified at the new trial hearing. When directly and unambiguously asked whether he told appellant, at any point, that there was a videotape of appellant committing the crime, trial counsel never directly answered the question. Instead, trial counsel provided a lengthy, non-responsive answer to a simple question. When asked a second time, he responded, "I relayed everything that I told the defendant." Although the direct answer was within trial counsel's knowledge, he never gave it. Trial counsel had every opportunity to deny appellant's allegation about the videotape— but he never did.[3]

Despite the fact that trial counsel was evasive in his answers, his testimony did not conflict with appellant's. Like appellant, trial counsel testified appellant originally intended to plead not guilty because he had no memory of the event. Thereafter, trial counsel talked with the district attorney's office and was told there "might" be a videotape. Trial counsel testified that after he passed this information on to appellant, appellant changed his plea to guilty. Consequently, even if we disregard all testimony by appellant and his witnesses, the only other evidence before the trial judge was that trial counsel told appellant a videotape of him committing the offense "might" exist, and if so, that it would be "hard" for appellant "to claim that he was innocent of the offense." We now review whether counsel's statements constitute ineffective assistance of counsel in this case.

---

3. At the conclusion of trial counsel's testimony, the judge asked counsel whether he "induce[d] the defendant to enter a plea of guilty by telling him that there was, in fact, a videotape of his committing the crime." Trial counsel responded, "No, Judge." Whether trial counsel "in-

duced" appellant to plead guilty by telling him about a videotape is a different issue than whether trial counsel told appellant about a videotape in the first instance. Thus, contrary to the State's argument that this testimony constitutes a "resolute" denial, we disagree.

It is fundamental that a criminal defense attorney must have a firm command of the facts of the case as well as the governing law before the attorney can render reasonably effective assistance of counsel. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim.App.1990). Rather than rely on the facts as represented by the district attorney's office, counsel had a duty to make an independent investigation of the facts of his client's case and prepare for trial. *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex.Crim.App. 1992); *Ex parte Pool*, 738 S.W.2d at 286. This duty included determining with certainty whether a videotape existed and whether appellant was depicted on the videotape. Counsel was obligated to discuss his findings with appellant so that an informed decision could be made on how to proceed in the case. Here, such an investigation would have revealed that, in fact, no videotape existed. We conclude these circumstances combine to verify that appellant's trial counsel's representation fell below an objective standard of reasonableness.

Having found the first prong of *Strickland* is met, we must now determine whether counsel's constitutionally ineffective performance prejudiced appellant's defense. The question we must decide is whether appellant has shown a reasonable probability that, but for counsel's misstatement of the evidence, he would not have pleaded guilty and would have insisted on going to trial. Again, we conclude appellant has met his burden. Appellant testified that he did not remember committing the robbery because he suffered alcohol blackouts. Linda Robles, a certified alcohol and drug abuse counselor, testified appellant was an alcoholic. She also testified that a blackout, or "chemically induced amnesia," is a recognized phenomenon among alcoholics. She said appellant had been exhibiting blackouts since his teens. Although appellant testified he did not remember committing the offense, he said he changed his plea to guilty after trial counsel told him there was a videotape of the crime. Trial counsel acknowledged telling appellant that a videotape would make it "hard to claim that he was innocent of the offense." Moreover, appellant testified he would not have pleaded guilty if he had known there was no videotape. Effective representation would have revealed that fact. On the record before us, we conclude appellant has satisfied both prongs of the *Strickland* test and was denied effective assistance of counsel at trial.

One basic tenet of our criminal jurisprudence is that before a trial court accepts a plea of guilty, the plea must be freely and voluntarily given by a mentally competent defendant. See TEX.CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon 1989); *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex.Crim.App.1991). A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex.Crim.App.1980); *Diaz v. State*, 905 S.W.2d 302, 308 (Tex.App.—Corpus Christi 1995, no pet.).

Having concluded appellant was denied effective assistance of counsel, we likewise conclude his guilty plea was rendered involuntary by the failure of trial counsel, through an independent investigation, to determine that, in fact, a videotape did not exist and to convey that information to appellant. *See McGuire v. State*, 617 S.W.2d 259, 261 (Tex.Crim.App.1981); *Gomez v. State*, 921 S.W.2d 329, 333 (Tex.App.—Corpus Christi 1996, no pet.); *Messer v. State*, 757 S.W.2d 820, 824 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Accordingly, the trial court abused its discretion in denying appellant's motion for new trial. We sustain appellant's first point of error. Our disposition of appellant's first point of error makes it unnecessary for us to consider his remaining point of error. TEX.R.APP. P. 47.1.

We reverse the trial court's judgment and remand for a new trial.